Filed 10/9/25  P. v. Rubio CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C100808 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-FE-2021-0005296) |
| v. | |
| JULIAN AXEL RUBIO, | |
| Defendant and Appellant. | |

Defendant Julian Axel Rubio was driving a car under the influence of alcohol when he struck and killed two motorcyclists in a head-on collision.  A jury found him guilty of two counts of second degree implied malice murder (Pen. Code, § 187, subd. (a))[1] and related counts, including two counts of gross vehicular manslaughter while intoxicated (*id.,* § 191.5, subd (a)) and two counts of driving under the influence (DUI)

---

[1]  Undesignated statutory references are to the Penal Code.

1

causing injury (Veh. Code, § 23153, subds. (a), (b)) (we collectively refer to defendant's convictions for violating subdivision (a) and (b) of Vehicle Code section 23153 as "the DUI causing injury" convictions). The jury also found true the great bodily injury enhancements. (Pen. Code, § 12022.7, subd. (a).) In a bifurcated proceeding, defendant admitted he had a prior DUI conviction (Veh. Code, § 23152, subd. (b)) within 10 years of another DUI offense (*id*., § 23540, subd. (a)). He also admitted the aggravating circumstance that he was on probation at the time of the current offenses. (See Cal. Rules of Court, rule 4.421, subd. (b)(4).) The trial court sentenced him to an aggregate term of 30 years to life in prison, the maximum possible term of imprisonment.

Defendant appeals, arguing reversal is required due to instructional error and sentencing error. We will reverse the DUI causing injury convictions because they are lesser included offenses of gross vehicular manslaughter while intoxicated. We will also strike the jury's true findings on the great bodily injury enhancements attached to the reversed convictions, vacate sentence, and remand for further proceedings. In all other respects, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The defense theory at trial was that defendant was not the driver of the car involved in the fatal collision. Since the issues on appeal relate to instructional error and sentencing error, we briefly summarize the relevant facts.

Just before midnight on Saturday May 22, 2021, defendant was under the influence of alcohol when he drove a car (Honda Accord) into oncoming traffic at a high rate of speed and collided head-on with two motorcyclists--Roger Delgadillo and James Fugman. The collision occurred on Mariposa Road, a rural two-lane road in San Joaquin County with a speed limit of 55 miles per hour. The passenger in the front seat of the car (Toyota Corolla) traveling behind the motorcyclists estimated that, at the time of the collision, defendant was driving around 80 miles per hour while the motorcyclists were driving around 50 miles per hour. The driver of the Toyota also estimated that the

2

motorcyclists were driving around 50 miles per hour at the time of the collision. As a result of the collision, the Honda caught fire. The driver of the Toyota pulled defendant out of the Honda shortly before it became fully engulfed in flames. Neither the driver nor the passenger of the Toyota saw anyone but defendant get out of the Honda.

The two motorcyclists suffered multiple severe traumatic injuries and died at the scene. There were no "antilock brake skid marks" on Mariposa Road indicating that defendant attempted to stop the Honda before colliding with the motorcyclists. Immediately prior to the collision, the Toyota's passenger saw defendant pass a car that was traveling in front of him by moving into the lane of opposing traffic.

At the scene, a responding police officer (Antonio Galindo) observed signs of alcohol impairment--defendant smelled of alcohol and his right eye was red and "watery."[2] Galindo also observed that defendant had "lots" of cuts on his face and blood on his T-shirt. Later that night, at the hospital, Galindo saw that defendant had abrasions that began on his left shoulder and ran diagonally down his chest, ending at his lower right hip area. Galindo testified that these abrasions were consistent with defendant driving the Honda.

A breathalyzer test, which was administered at 1:36 a.m., indicated that defendant had a blood-alcohol concentration of 0.127 percent. A blood draw at 2:13 a.m. revealed that defendant's blood-alcohol concentration was 0.122 percent. At trial, an expert in forensic alcohol analysis opined that defendant's blood-alcohol concentration at the time of the collision would have been approximately 0.15 percent, or nearly twice the legal limit (0.08 percent).

At the scene and then later at the hospital, defendant told Galindo that he was asleep in the backseat of the Honda at the time of the collision. Defendant also claimed

---

[2] Defendant had prosthetic left eye.

3

that another man was driving the Honda, and that he (defendant) and the two others were coming home from a party. At the hospital, defendant added that the other two men (whose full names he did not know) had fled the scene on foot after the collision.

At the close of trial, the parties entered into a stipulation, which informed the jury as follows: In August 2020, defendant was convicted of driving with a blood-alcohol level of 0.08 percent or above in violation of Vehicle Code section 23152, subdivision (b). As a result of that conviction, defendant was ordered to attend a DUI program as a condition of probation and was admonished by the trial court, pursuant to *People v. Watson* (1981) 30 Cal.3d 290[3] and Vehicle Code section 23593, subdivision (a), that it is extremely dangerous to human life to drive under the influence of alcohol, and that if defendant did so again and someone was killed, he could be charged with murder. The purpose of this advisement, which is commonly referred to as a "*Watson* admonition" is to warn individuals convicted of DUI of the potential consequences of a subsequent DUI that results in death. (See *People v. Jimenez* (2015) 242 Cal.App.4th 1337, 1358-1359 [evidence of prior DUI convictions and attendance at substance abuse programs established, for purposes of implied malice murder, that "defendant knew his impaired driving endangered the lives of others, but acted 'with conscious disregard for life' "]; *People v. Hendrix* (2013) 214 Cal.App.4th 216, 241 [knowledge of the dangers of driving while intoxicated can be obtained through a prior DUI conviction, DUI classes, or from the admonition required by Vehicle Code section 23593 upon a DUI-related conviction]; *People v. Brogna* (1988) 202 Cal.App.3d 700, 709 ["[E]vidence that a defendant has suffered a prior conviction and participated, as a condition of probation, in some form of alcohol education program which emphasized the dangers of driving while intoxicated is

---

[3] Vehicular homicides charged under a theory of second degree implied malice murder are known as "*Watson* murders." (*People v. Lagunas* (2023) 97 Cal.App.5th 996, 1006.)

relevant to prove the accused's awareness of the life threatening risks caused by his conduct"].)

In mid-April 2021, one month before the fatal collision, defendant enrolled in a DUI program and signed a document containing a "*Watson* admonition." In relevant part, the admonition stated: "I understand that alcohol . . . impairs my ability to drive, and I understand the dangerous consequences of drinking . . . and driving. If I choose to ignore this warning and drive while under the influence of alcohol . . . and someone is killed, I understand I may be charged with vehicular manslaughter or murder. The elements of malice and the charge of murder may be implied because I had knowledge of the danger of the conduct, and the risk that such conduct poses to the public."

After the jury returned its guilty verdicts (including two counts of second degree implied malice murder (§ 187, subd. (a)), the trial court imposed the maximum term of imprisonment possible, 30 years to life. Defendant filed a timely notice of appeal, and the matter was fully briefed and assigned to this panel in July 2025.

## DISCUSSION

### I

### *Instructional Error*

Defendant first argues the trial court erroneously instructed the jury on the required elements of second degree implied malice murder by failing to modify the pattern jury instruction--CALCRIM No. 520--to include certain language from *People v. Reyes* (2023) 14 Cal.5th 981 (*Reyes*), which was decided by our Supreme Court six months before the jury rendered its verdicts. He claims the instruction given to the jury should have included the meaning of the phrase "dangerous to human life," which was defined by the *Reyes* court to mean "a high degree of probability that [the act in question] will result in death," and that the omission of this language from the challenged instruction was prejudicial error. We disagree.

5

A. *Additional Background*

At the close of trial in late December 2023, the jury was instructed (without objection) with the then-current version of CALCRIM No. 520 as follows:

"The defendant is charged in Counts 1 and 2 with murder in violation of Penal Code Section 187. To prove that the defendant is guilty of this crime the People must prove that:

"1. The defendant committed an act that caused the death of another person;

"AND

"2. When the defendant acted, he had a state of mind called malice aforethought.

"There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder.

"The defendant had express malice if he unlawfully intended to kill.

"The defendant had *implied malice* if:

"1. He intentionally committed the act;

"2. *The natural and probable consequences of the act were dangerous to human life*;

"3. At the time he acted, he knew his act was dangerous to human life;

"AND

"4. He deliberately acted with conscious disregard for human life.

"Malice aforethought does not require hatred or ill will toward the victim. It is a mental state that must be formed before the act that causes death is committed. It does not require deliberation or the passage of any particular period of time.

"If you find the defendant guilty of murder, it is murder of the second degree." (Italics omitted and added.)

Three months after the jury returned its guilty verdicts, in March 2024, the Judicial Council modified the language of CALCRIM No. 520 regarding the "dangerous to human life" component (or actus reus element) of implied malice murder. Specifically,

6

language was added (italicized below) to include the definition of the phrase "dangerous to human life" set forth in *Reyes, supra*, 14 Cal.5th 981. (See Bench Notes to CALCRIM No. 520.) In relevant part, the CALCRIM No. 520 pattern instruction now provides:

"The defendant had *implied malice* if:

"1. (He/She) intentionally (committed the act/[or] failed to act);

"2. The natural and probable consequences of the (act/[or] failure to act) were dangerous to human life *in that the (act/[or] failure to act) involved a high degree of probability that it would result in death*;

"3. At the time (he/she) (acted/[or] failed to act), (he/she) knew (his/her) (act/[or] failure to act) was dangerous to human life;

"AND

"4. (He/She) deliberately (acted/[or] failed to act), with conscious disregard for (human/ [or] fetal) life." (See CALCRIM No. 520, second italics added.)

B. *Applicable Legal Principles and Standard of Review*

Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) Here, defendant was convicted of second degree murder, which is " 'the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder.' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507.)

Malice "may be express or implied." (§ 188, subd. (a).) "Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (*Id*., subd. (a)(2).) "[I]mplied-malice murder has a physical component: an act whose natural consequences are dangerous to life. And it has a mental component: defendant's deliberate performance of the act with conscious disregard for life, knowing the act endangers another's life." (*In re Ferrell* (2023) 14 Cal.5th 593, 604.) "The mental component calls for a subjective inquiry into a defendant's state of mind and requires 'a determination that the defendant *actually*

7

*appreciated* the risk involved, i.e., a *subjective* standard.' " (*Id*. at p. 604.) By contrast, the physical component requires an objective determination as to whether the natural consequences of the act in question were "dangerous to life," which *means the same thing* as a high degree of probability that the act will result in death. (*Reyes, supra*, 14 Cal.5th at p. 989, italics added; see also *People v. Knoller* (2007) 41 Cal.4th 139, 157 (*Knoller*).)

"[M]alice may be implied when a person drives a motor vehicle under the influence of alcohol and kills someone." (*People v. Lagunas*, *supra*, 97 Cal.App.5th at p. 1005; *People v. Watson, supra*, 30 Cal.3d at pp. 300-301.) "Since [our Supreme Court's decision in] *Watson*, appellate courts have upheld numerous murder convictions in cases where defendants have committed homicides while driving under the influence of alcohol. [Citations.] These opinions have generally relied on some or all of the factors that were present in *Watson*: '(1) blood-alcohol level above the .08 percent legal limit; (2) a pre-drinking intent to drive; (3) knowledge of the hazards of driving while intoxicated; and (4) highly dangerous driving.' [Citation.] However, 'courts have recognized that there is no particular formula for analysis of vehicular homicide cases, instead requiring a case-by-case approach.' " (*People v. Suazo* (2023) 95 Cal.App.5th 681, 692-693.)

Historically, California courts have used two different standards (or tests) for implied malice, reflecting judicial attempts to translate the "abandoned and malignant heart" element into a tangible standard a jury can apply. (*People v. Nieto Benitez* (1992) 4 Cal.4th 91, 103 (*Nieto Benitez*).) The first standard provides that malice can be implied where " 'the defendant for a base, antisocial motive and with wanton disregard for human life, does *an act that involves a high degree of probability that it will result in death*.' " (*Nieto Benitez,* at pp. 103-104, italics added.) The second standard provides that malice can be implied where the killing was proximately caused by " ' "*an act, the natural consequences of which are dangerous to life*, which act was deliberately performed by a

8

person who knows that his conduct endangers the life of another and who acts with conscious disregard for life." ' " (*Nieto Benitez,* at p. 104, italics added.)

Our Supreme Court has repeatedly held that the two tests are *equivalent* and reflect the *same* standard. (See, e.g., *People v. Dellinger* (1989) 49 Cal.3d 1212, 1219 [reaffirming the finding in *Watson* that the two tests (or definitions) of implied malice "articulated one and the same standard"]; *Nieto Benitez, supra*, 4 Cal.4th at p. 104; see *id.* at p. 111 [rejecting claim that jury instruction misstated the law because it omitted the requirement that defendant commit the act with a high degree of probability that death will result, explaining that the instruction correctly distilled the correct law as it required an act with natural consequences that are dangerous to life)].) In 2007, our high court directed trial courts to instruct juries on implied malice as follows: "Malice is implied when the killing is proximately caused by ' "*an act, the natural consequences of which are dangerous to life*, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life." ' " (*Knoller*, supra, 41 Cal.4th at p. 143, italics added [explaining that "implied malice requires a defendant's awareness of engaging in conduct that endangers the life of another—no more, and no less"].)

In 2023, the *Reyes* court discussed the meaning of the phrase "dangerous to human life" in the context of the denial of a petition for resentencing under former section 1170.95 (now section 1172.6), which claimed that there was insufficient evidence to support a conviction of the defendant under any valid theory of murder, including implied malice murder. (*Reyes, supra*, 14 Cal.5th at pp. 984, 986-987, 989-990.) In reversing, the *Reyes* court explained: "To suffice for implied malice murder, *the defendant's act must not merely be dangerous to life in some vague or speculative sense; it must ' "involve[ ] a high degree of probability that it will result in death*." ' " (*Reyes*, at p. 989, italics added.) In March 2024, several months after the jury rendered its guilty verdicts in this case, the Judicial Council modified CALCRIM No. 520 to incorporate the

9

*Reyes* court's definition of "dangerous to human life" into the elements required for a finding of implied malice. Specifically, (as noted *ante*) the revised version of the pattern instruction now includes the following italicized language pertaining to the actus reus element (or objective component) of implied malice murder: The natural and probable consequences of the act were dangerous to human life *in that the act involved a high degree of probability that it would result in death*. (See CALCRIM No. 520.)

A trial court has a sua sponte duty to instruct the jury on all elements of any charged offense. (*People v. Mil* (2012) 53 Cal.4th 400, 409.) This duty extends to the general principles of law that govern the case, i.e., those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. (*People v. Michaels* (2002) 28 Cal.4th 486, 529-530.)

" 'We review a claim of instructional error de novo.' " (*People v. Parker* (2022) 13 Cal.5th 1, 66.) In doing so, we consider the challenged instruction " 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.' " (*People v. Rivera* (2019) 7 Cal.5th 306, 326.) And we " 'assume that jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given.' " (*People v. Richardson* (2008) 43 Cal.4th 959, 1028, superseded by statute on another ground as stated in *People v. Nieves* (2021) 11 Cal.5th 404, 509.)

When a trial court fails to instruct the jury on an essential element of the charged offense, the applicable standard of prejudice is the standard articulated in *Chapman v. California* (1967) 386 U.S. 18, 24. (*People v. Mil*, *supra*, 53 Cal.4th at p. 409; *Neder v. United States* (1999) 527 U.S. 1, 4.) Under the *Chapman* standard, a federal constitutional error requires reversal unless the People show the error was "harmless beyond a reasonable doubt." (*Chapman*, at p. 24.)

C. *Analysis*

10

Defendant argues the trial court committed prejudicial instructional error by failing to instruct the jury with the "high degree of probability" of death language from *Reyes*. He claims reversal is required because the then-current version of CALCRIM No. 520 given to the jury did not include the language added to the pattern instruction by the Judicial Council three months after the jury returned its guilty verdicts. He contends the trial court had a sua sponte duty to modify the pattern instruction so that the actus reus element (or objective component) of the implied malice instruction included the following italicized language: "The natural and probable consequences of the act were dangerous to human life *in that the act involved a high degree of probability that it would result in death*." According to defendant, the *Reyes* decision, which was issued six months before the close of trial, required the jury to be instructed with such language. We are unpersuaded.

Contrary to defendant's contention, the *Reyes* court did not hold or suggest that the version of CALCRIM No. 520 given to the jury in this case, which required a finding that the natural and probable consequences of the act in question were dangerous to human life, was an incorrect statement of the law. In *Reyes*, our Supreme Court reiterated the long-held precedent that "under the objective component of implied malice, ' " 'dangerous to life' " ' *means the same thing* as a ' "high degree of probability that" ' the act in question ' "will result in death." ' " (*Reyes, supra*, 14 Cal.5th at p. 989, italics added; see *Knoller, supra,* 41 Cal.4th at p. 152.) The high court's decision in *Reyes*, which did not involve a claim of instructional error but rather a substantial evidence challenge to a conviction for second degree implied malice murder in the context of a gang-related homicide (shooting) committed by a person other than the defendant (see *Reyes, supra*, 14 Cal.5th at p. 984), neither overturned nor otherwise questioned its prior decisions in which it held that the "dangerous to human life" standard and the "high degree of probability" that death will result standard are equivalent and are intended to embody the same standard. (See, e.g., *Knoller, supra,* 41 Cal.4th at p. 152.) Indeed,

11

nothing in *Reyes* suggests the Supreme Court was of the opinion that any modification to CALCRIM No. 520 was necessary or that the instruction otherwise did not correctly state the law. " 'It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered.' " (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 680.) Accordingly, we find no instructional error. The jury was given an instruction that included a correct statement of the law regarding the actus reus element (or objective component) of implied malice murder. (See *Nieto Benitez, supra*, 4 Cal.4th at p. 111 [rejecting argument (similar to the one defendant makes here) that jury instruction misstated the law because it omitted a requirement that defendant commit the act with a "high probability that death will result"]; *Knoller, supra*, 41 Cal.4th at p. 157.)

But even were we to assume the trial court committed instructional error by failing to sua sponte instruct the jury in the manner defendant suggests for the first time on appeal, no prejudice appears. In other words, we conclude any such error was harmless beyond a reasonable doubt. Here, the evidence adduced at trial showed that defendant had been at a party drinking alcohol before driving and had a blood-alcohol concentration of 0.15 percent at the time of the fatal head-on collision, which was nearly twice the legal limit (0.08 percent). As we have detailed above, the evidence also showed that defendant was driving in a highly dangerous manner on a rural two-lane road late on a Saturday night, and there were other vehicles around him. And, less than a year before the collision, defendant was convicted of DUI. As a consequence of that conviction, defendant was ordered to attend a DUI program as a condition of probation and was specifically admonished by the trial court regarding *Watson* murder. Only one month before the collision, defendant signed a document containing a *Watson* admonition, indicating that he understood that alcohol impaired his ability to drive, that he understood the dangerous consequences of drinking and driving, and that if he drove while under the influence of alcohol and someone was killed, he might be charged with implied malice

12

murder because he had knowledge of the danger of the conduct and the risk that such conduct posed to the public.

It is commonly understood that driving under the influence of alcohol is dangerous to human life, which has long been recognized by the California courts. (*Burg v. Municipal Court* (1983) 35 Cal.3d 257, 262 [the "drunk driver cuts a wide swath of death, pain, grief, and untold physical and emotional injury across the roads of California and the nation"]; *Helmandollar v. Department of Motor Vehicles* (1992) 7 Cal.App.4th 52, 57 [ recognizing that there are "numerous, dangerous, and deadly risks associated with drinking and driving"]; *People v. Brogna*, *supra*, 202 Cal.App.3d at p. 709 [that drunk driving is "inherently dangerous" is a "simple fact [that] has been made well known to all segments of our society through virtually every form of mass media"].)

Having considered the challenged instruction in the context of the trial record (including the presence of the *Watson* factors), the other jury instructions, and closing arguments, we are convinced beyond a reasonable doubt that the jury would have found defendant guilty of second degree implied malice murder absent the asserted instructional error. No reasonable jury could have concluded that the natural and probable consequences of defendant's driving and all that it entailed the night of the fatal crash was dangerous to human life in some vague or speculative sense but did not involve a high degree of probability of resulting in death. And, in finding defendant guilty of gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)), the jury necessarily found that he acted in a reckless way that created a high risk of death or great bodily injury (see CALCRIM No. 590).

Defendant argues the purported error was not harmless beyond a reasonable doubt because, although he was intoxicated and speeding, the circumstances--driving late at

night on a rural road--made it unlikely that there would be any traffic.[4] But the record reflects that there were multiple vehicles on the road around the time of the fatal head-on collision, including the two motorcyclists, the Toyota containing two people, and at least two other vehicles. Moreover, defendant was traveling at approximately 80 miles per hour (in a 55 mile per hour zone) in the *oncoming* lane at the time of the head-on collision. Under the circumstances presented, any claim that defendant's conduct was not dangerous to human life because it did not involve a high degree of probability that it would result in death is not reasonable. We thus reject defendant's contention that reversal is required due to prejudicial instructional error.[5]

## II

### *Lesser Included Offenses*

Next, defendant argues his convictions for DUI causing injury (Veh. Code § 23153, subds. (a), (b); count 5 and count 6) must be reversed under the statutory elements test because they are lesser included offenses of gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a); count 3 and count 4). We agree.

A. *Applicable Legal Principles and Standard of Review*

---

[4] In support of this claim, defendant asks us to take judicial notice of data (statistics) compiled by the California Department of Motor Vehicles over the last 40 years regarding the rate of vehicle fatalities involving a person driving under the influence. The purpose of the request is to show that driving while intoxicated results in a fatal injury in "far less than one percent of cases." As a general rule, an appellate court should not take judicial notice of information that was not presented or considered in the trial court in the first instance. (See *People v. Hardy* (1992) 2 Cal.4th 86, 134; see also *People v. Sanders* (2003) 31 Cal.4th 318, 323, fn. 1 [declining to take judicial notice of documents that were not before trial court].) Defendant has not convinced us to depart from this rule, and we therefore deny the motion. But even were we inclined to consider this information, our conclusion would not change. This case does not present a close call on the objective component of implied malice.

[5] In light of our conclusion, we need not and do not consider the People's forfeiture argument or defendant's related ineffective assistance of counsel claim.

14

A person can generally be convicted of more than one crime arising out of the same act or course of conduct, although not punished for both. (*People v. Reed* (2006) 38 Cal.4th 1224, 1226; see §§ 954, 654.) However, a judicially created exception to the general rule permitting multiple conviction prohibits multiple convictions based on necessarily (or lesser) included offenses. (*Reed*, at p. 1227; see *People v. Sloan* (2007) 42 Cal.4th 110, 115, fn. 2. [explaining that "[t]he terms 'necessarily included offense' and 'lesser included offense' have been used interchangeably by the courts in determining whether the rule against multiple convictions applies in any given case"].)

"When a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed." (*People v. Sanders* (2012) 55 Cal.4th 731, 736.) If "such a state of affairs is discovered on appeal, the correct course of action is to reverse the conviction for the included offense and direct the entry of a dismissal of the less serious crime." (*People v. Chan* (2005) 128 Cal.App.4th 408, 421.)

"To ascertain whether one crime is necessarily included in another, courts may look either to the accusatory pleading or the statutory elements of the crimes. When, as here, the accusatory pleading incorporates the statutory definition of the charged offense without referring to the particular facts, a reviewing court must rely on the statutory elements to determine if there is a lesser included offense. [Citations.] 'The elements test is satisfied if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, such that all legal elements of the lesser offense are also elements of the greater. [Citation.] In other words, " '[i]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' " ' " (*People v. Robinson* (2016) 63 Cal.4th 200, 207.) In determining whether the greater offense can be committed without also committing the lesser offense, "we do not consider the underlying facts of the case or the language of the

15

accusatory pleading." (*People v. Sanders*, *supra*, 55 Cal.4th at p. 739.) We independently review the question of whether a defendant was lawfully convicted of more than one crime arising out of the same act or course of conduct. (*People v. Duffy* (2020) 51 Cal.App.5th 257, 261.)

In relevant part, Vehicle Code section 23153 provides: "(a) It is unlawful for a person, while under the influence of any alcoholic beverage, to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver. [¶] (b) It is unlawful for a person, while having 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver." (Veh. Code, § 23153, subds. (a), (b).)

Subdivision (a) of Penal Code section 191.5 defines gross vehicular manslaughter while intoxicated as "the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, and with gross negligence." (Pen. Code, § 191, subd. (a).) Thus, a violation of Vehicle Code section 23153 constitutes one way that gross vehicular manslaughter while intoxicated may be committed.

B. *Analysis*

As previously indicated, the jury found defendant guilty of two counts of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a); count 3 and count 4) and two counts of DUI causing injury (Veh. Code, § 23153, subds. (a), (b); count 5 and count 6). The vehicular manslaughter counts involved the death of

Delgadillo (count 3) and the death of Fugman (count 4). The DUI causing injury counts (count 5 and count 6) each involved both Delgadillo and Fugman.

We agree with defendant that his convictions for DUI causing injury must be reversed because they are lesser included offenses of his convictions for gross vehicular manslaughter while intoxicated. (See *People v. Miranda* (1994) 21 Cal.App.4th 1464, 1468 (*Miranda*) [DUI causing injury (Veh. Code, § 23153, subd. (a)) is a lesser included offense of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)) when the charges arise out of a single accident causing the death of a single victim]; *People v. Binkerd* (2007) 155 Cal.App.4th 1143, 1145, 1147-1150 (*Binkerd*) [relying on *Miranda* to conclude that DUI causing injury (Veh. Code, § 23153, subd. (a)) is a lesser included offense of vehicular manslaughter without gross negligence (Pen. Code former § 192, subd. (c)(3), now § 191.5, subd. (b)) when the charges arise out of a single accident causing the death of a single victim]; *People v. Meno* (2024) 102 Cal.App.5th 943, 953 (*Meno*), review granted, Sep. 11, 2024, S286092 [relying on *Miranda* and *Binkerd* to conclude that DUI causing injury in violation of Vehicle Code section 23153, subdivisions (a) and (b) are lesser included offenses of vehicular manslaughter while intoxicated without gross negligence (Pen. Code, § 191.5, subd. (b)) where the charges arise out of a single accident causing the death of two victims].)

In *Meno*, as in this case, the defendant was convicted of two counts of vehicular manslaughter while intoxicated without gross negligence (Pen. Code, § 191.5, subd. (b)) and two counts of DUI causing injury (Veh. Code § 23153, subds. (a), (b)). (*Meno, supra*, 102 Cal.App.5th at p. 946.) The charges arose out of an incident where two people died as a result of a crash while the defendant was driving under the influence of alcohol. (*Id*. at p. 947.) In finding that the DUI causing injury convictions were lesser included offenses of vehicular manslaughter while intoxicated without gross negligence, the *Meno* court explained: "[W]e agree with the courts in *Miranda* and *Binkerd* that, focusing on the language of the statutes themselves, as to a single victim that died, DUI

17

causing injury is a necessarily included offense of vehicular manslaughter while intoxicated. The same remains true for two individual counts of vehicular manslaughter while intoxicated as to two separate victims. A defendant may not be convicted of both manslaughter and DUI causing injury based on the death of a *single* individual victim killed during a single act of driving. But where, as here, a second victim also dies, the defendant could be convicted of two counts of vehicular manslaughter while intoxicated, one as to each victim; one count of vehicular manslaughter while intoxicated as to one victim and one count of DUI causing injury as to the other; or *one* count of DUI causing injury as to both victims. A defendant cannot, however, be convicted of two counts of vehicular manslaughter while intoxicated, one as to each victim, *and* DUI causing injury. (*Meno, supra*, 102 Cal.App.5th at p. 953, fn. omitted.) Thus, where, as here, "a defendant is convicted of both vehicular manslaughter while intoxicated and DUI causing injury *for the same victim or set of victims*," the judicially created rule prohibiting multiple convictions for the same act based on necessarily included offenses applies. (*Id.* at p. 954.) We agree.

We are unpersuaded by the People's contention that defendant's convictions for DUI causing injury are not lesser included offenses of gross voluntary manslaughter while intoxicated because a person can violate Penal Code section 191.5, subdivision (a) by driving in violation of Vehicle Code section 23140 (driving with a blood-alcohol concentration of 0.05 percent while under the age of 21 years), "which does not require the elements found in either Vehicle Code section 23152 or Vehicle Code section 23153." The *Binkerd* court rejected a similar argument, and so do we. In *Binkerd*, the court concluded that Vehicle Code section 23153 is a lesser included offense of vehicular manslaughter while intoxicated without gross negligence (Pen. Code former § 192, subdivision (c), now § 191.5, subd. (b)), which required that the defendant commit a "violation of Section 23140, 23152, or 23153 of the Vehicle Code." (*Binkerd*, *supra*, 155 Cal.App.4th at p. 1147.) In rejecting the People's argument that Vehicle Code section

18

23153 is not a lesser included offense of Penal Code former section 192, subdivision (c) because a violation of that provision could have been predicated upon a violation of Vehicle Code section 23140, the *Binkerd* court noted (among other things) that the defendant in that case "was over the age of 21 at the time and could not be charged with violating Vehicle Code section 23140." (*Binkerd,* at pp. 1148-1149; see *id*. at p. 1149 [concluding that, in "cases where one victim dies from an alcohol-related accident due to a violation of Vehicle Code sections 23140, 23152, or 23153, the Vehicle Code violation would always be a lesser included offense of [vehicular manslaughter while intoxicated without gross negligence]".)

As the *Miranda* court stated: "One person who injures a person while driving under the influence commits a violation of Vehicle Code section 23153; and if that person dies from that injury . . . a violation of Penal Code section 191.5 has occurred." (*Miranda, supra*, 21 Cal.App.4th at p. 1468.) The reasoning in *Miranda* and *Binkerd* applies here and forecloses the People's argument. Because defendant was over the age of 21 at the time of the fatal collision, he could not have been charged with a violation of Vehicle Code section 23140, which (as noted *ante*) prohibits persons under the age of 21 years from driving with a blood-alcohol concentration of 0.05 percent or more. Thus, when (as here) a person is over the age of 21, he cannot commit gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)) without also violating Vehicle Code section 23153, subdivisions (a) and (b).

Accordingly, we will reverse defendant's convictions on count 5 and count 6 for DUI causing injury (Veh. Code, § 23153, subds. (a), (b)), which are lesser included offenses of count 3 and count 4--gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)). We will also strike the great bodily injury enhancements (*id*., § 12022.7, subd. (a)) attached to the reversed convictions (see *Miranda, supra*, 21 Cal.App.4th at pp. 1468-1469; *Binkerd, supra*, 155 Cal.App.4th at p. 1150), and remand with directions for the trial court to dismiss the reversed counts and conduct a full

19

resentencing (*People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances' "]).

## III

### *Sentencing Error*

Finally, defendant argues the trial court erred by imposing the maximum sentence possible--including an aggregate term of 30 years to life based on his two convictions for second degree implied malice murder. (§ 187, subd. (a).) He contends reversal is required because the trial court should have, pursuant to section 654, imposed punishment under the provision providing for a shorter term of imprisonment (§ 191.5, subd. (a), gross vehicular manslaughter while intoxicated).

Effective January 1, 2022, Assembly Bill No. 518 (2021-2022 Reg. Sess.) "amended section 654 by removing the requirement that a defendant be punished under the provision providing for the longest term of imprisonment, and granting the trial court discretion to impose punishment under any applicable provision." (*People v. Fugit* (2023) 88 Cal.App.5th 981, 995.) Thus, "section 654 now provides the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence." (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.)

Because we are vacating the sentence and remanding the matter for a full resentencing, defendant will have the opportunity on remand to request the trial court exercise its discretion under section 654 in the manner he describes on appeal. (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425 ["the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant"].) In requesting such relief, defendant may urge the court to consider any factors in mitigation that he

20

believes are appropriate. (See *People v. Whitmore* (2022) 80 Cal.App.5th 116, 132.) We express no opinion as to how the trial court should exercise its discretion on remand.

## DISPOSITION

Defendant convictions for DUI causing injury (Veh. Code, § 23153, subds. (a), (b); count 5 and count 6) are reversed. The great bodily injury enhancements (Pen. Code, § 12022.7, subd. (a)) attached to those convictions are stricken. The sentence is vacated, and the matter is remanded to the trial court with directions to dismiss count 5 and count 6 and conduct a full resentencing. In all other respects, the judgment is affirmed.


_____/s/_____
Duarte, J.



We concur:




_____/s/_____
Earl, P. J.




_____/s/_____
Mauro, J.